**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| GERMAN ZUNIGA,<br><br>              Petitioner,<br><br>vs.<br><br>TIM McCONAHAY, WARDEN,<br><br>              Respondent. | CASE NO. 1:22-CV-00864<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Petitioner German Zuniga ("Petitioner" or "Mr. Zuniga") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his sentence and conviction for multiple drug crimes in Richland County Court of Common Pleas Case No. 2019-CR-0399.  (ECF Doc. 1 ("Petition").)  He filed his Petition with the assistance of counsel on May 24, 2022.  (*Id*.)

The matter was referred to the undersigned Magistrate Judge on May 25, 2022, pursuant to Local Rule 72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 5 & 7.)  For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Ground One as non-cognizable and **DISMISS** Ground Two as procedurally defaulted.  The request for an evidentiary hearing is **DENIED**.

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence. *See id.*; *Railey v. Webb*,

540 F.3d 393, 397 (6th Cir. 2008).

The Fifth District Court of Appeals summarized the facts underlying Mr. Zuniga's

conviction and sentence as follows:

> {¶4} Trooper Cole Browne was on duty on February 6, 2019 when he was advised
> to watch for a vehicle. He received a description of the vehicle, license plate
> number, and the occupants. The Trooper was told that the vehicle may be carrying
> drugs and that if he had probable cause to stop the vehicle he should do so.

> {¶5} When Trooper Browne first saw the vehicle he estimated that it was traveling
> at a speed in excess of the 55 mph limit. He confirmed the vehicle's speed with a
> laser and discovered that the driver's speed was 60 mph. The vehicle rapidly slowed
> from 60 mph to 54 mph and then to 50 mph.

> {¶6} Trooper Browne trailed the vehicle and pulled beside it to confirm the number
> of passengers and to note their behavior. He saw three occupants and noticed that
> the driver and the front seat passenger appeared to be conversing while looking
> ahead and not making eye contact with each other. The Trooper described them as
> looking rigid and uncomfortable in their seats. The passenger had a cell phone and
> was holding it at what Trooper Browne characterized as an odd angle. While the
> Trooper agreed that these behaviors were not illegal, he did consider them
> uncharacteristic of "normal motoring public behavior."

> {¶7} Once the Trooper reached a location where it was safe to pull off the road and
> the driver could not flee into an exit ramp, he activated his overhead lights to signal
> the driver to pull over. The drive complied, but positioned the vehicle so the driver's
> side was very close to the highway. Because the vehicle was stopped close to the
> road, Trooper Browne approached the passenger side of the vehicle and spoke with
> the driver through the passenger window. He requested the driver's license and the
> driver, Kylie Newman, began frantically rummaging through her purse. Trooper
> Browne also requested proof of insurance at the outset of the stop. Zuniga passed
> documents from Newman to the Trooper and the Trooper noted that both looked
> very uncomfortable and Zuniga's hands were shaking as he passed the papers.
> Trooper Browne characterized the behavior of the driver and Zuniga as more
> nervous than he has experienced in past traffic stops.

> {¶8} The proof of insurance that Newman provided had expired, so the Trooper
> returned the document and asked if she had valid proof of insurance. She continued
> to search and the Trooper asked her to exit the vehicle and enter his cruiser to make
> it easier to talk with her. She declined the invitation to enter the cruiser claiming to
> be claustrophobic, but did get out of the vehicle to speak with the Trooper. Newman
> suggested that the Trooper call her insurance company to confirm the validity of
> her coverage, but the Trooper was not willing to do so. He suggested that she may

be able to find proof of her coverage on her cell phone. She agreed and began to search her phone.

{¶9} While she searched her cell phone for evidence of insurance, the Trooper asked about the starting point and destination of her trip. She explained that they were visiting Zuniga's relative in a Texas hospital where he was being treated for cancer, but she could not remember the name of the facility. She confirmed that she visited the relative and that they were in Texas for one week. When the Trooper asked where she was going she replied that she was going home to Lorain, Ohio, but the route she was driving took her away from Lorain.

{¶10} The uncharacteristic nervousness of the driver and passenger and the driver's answers to questions, in the context of the information that the car may contain drugs, led Trooper Browne to read the driver her Miranda rights. Once he read her rights, she asked for the opportunity to speak with her lawyer. She reached her attorney by phone, and while she talked with her attorney, Trooper Browne moved away from her and back toward her vehicle.

{¶11} While Newman was speaking with her attorney, Trooper Browne asked Zuniga where they were heading. He answered "Lorain," but quickly corrected his response and explained that he was going to pick up a dress for his daughter and the driver did not know where they were going. Trooper Brown interpreted this response as inconsistent with the driver's description of their destination and further raised his suspicion. At this point Trooper Browne decided that he would use his dog, Atos, to sniff around the vehicle.

{¶12} Trooper Browne and his dog, Atos, completed three passes around the vehicle. On the first pass, Atos did not alert to any scents and did not indicate the presence of narcotics. On the second pass, Atos inhaled hot exhaust from the vehicle that interfered with his ability to perform, so Trooper Browne made a third pass. During that sweep of the vehicle, Atos alerted to the scent of narcotics and indicated that there were drugs in the vehicle in the vicinity of a tool box in the back of the vehicle. Trooper Browne opened the toolbox and discovered a false bottom concealing a very large amount of a white powder in plastic bags, later confirmed to be cocaine.

*State v. Zuniga*, 2021-Ohio-196, ¶¶ 4-12 (Ohio App. Ct. 2021).[1]

---

[1] Since the state court record filed by Respondent appears to be missing the first two pages of the Fifth District's decision on direct appeal (*see* ECF Doc. 5-1, pp. 101-22), the undersigned uses the legal citation herein.

## II.     Procedural Background

### A.     State Court Conviction

On May 10, 2019, a Richland County Grand Jury issued an indictment charging Mr. Zuniga with: one count of trafficking in cocaine (O.R.C. §§ 2925.03(A)(2) and (C)(4)(g)) (Count 1); one count of possession of cocaine (O.R.C. §§ 2925.11(A) and (C)(4)(f)) (Count 2); one count of aggravated funding of drug trafficking (O.R.C. §§ 2925.05(A)(3) and (C)(1)) (Count 3)); one count of operating a vehicle with a hidden compartment used to transport a controlled substance (O.R.C. §§ 2923.241(C) and (F)) (Count 4); and one count of identity fraud (O.R.C. §§ 2913.49(B)(2) and (I)(2)) (Count 5).  (ECF Doc. 5-1, pp. 3-4.)  The charges included forfeiture and major drug offender specifications.  (*Id.*)  Mr. Zuniga entered a not guilty plea.  (*Id.* at p. 6.)

On July 19, 2019, Mr. Zuniga filed a Motion to Suppress, asserting that the initial traffic stop was not supported by probable cause, the subsequent vehicle search was unconstitutional, and that any statements he made resulted from an unlawful arrest.  (*Id.* at p. 188.)  The State opposed the motion (*id.* at pp. 201-10), and a hearing was held on October 22-23, 2019 (*id.* at pp. 211, 215-375).

On December 12, 2019, the Richland County Court of Common Pleas denied Petitioner's Motion to Suppress.  (*Id.* at pp. 211-14.)  That same date, Mr. Zuniga moved to dismiss his May 10, 2019 indictment.  (*Id.* at p. 7.)  The following day, Mr. Zuniga orally moved to withdraw his motion to dismiss, and changed his plea from not guilty to no contest on all counts of the indictment.  (*Id.* at pp. 13-16.)  On January 2, 2020, the court of common pleas issued a Judgment Entry memorializing the change of plea and finding Mr. Zuniga guilty based on his no contest plea.  (*Id.* at pp. 13-14.)  On January 3, 2020, the court granted his motion to withdraw the motion to dismiss the indictment.  (*Id.* at p. 16.)

4

On January 2, 2020, Mr. Zuniga moved to merge all counts for sentencing.  (*Id*. at p. 17.)  The trial court granted the motion in part, merging Count 1 with Count 2 and Count 4 with Count 3.  (*Id*. at pp. 22-23.)  On January 3, 2020, the trial court sentenced Mr. Zuniga to a mandatory term of 11 years in prison on Counts 1 and 2, a second mandatory term of 11 years on Counts 3 and 4, and a term of six months on Count 5, to run consecutively.  (*Id.*)  The trial court also imposed a $1,741 fine on Mr. Zuniga, suspended his driver's license for 60 months, and advised him that he would be subject to a period of mandatory post-release control.  (*Id*. at p. 24.)  The Judgment Entry of Sentencing was docketed on January 7, 2020.  (*Id*. at pp. 22-25.)

## B.    Direct Appeal

On January 24, 2020, Mr. Zuniga, through current habeas counsel, filed a timely notice of appeal with the Fifth District Court of Appeals.  (ECF Doc. 5-1, p. 25.)  In his May 27, 2020 appellate brief (*id.* at pp. 27-55), he raised the following assignments of error:

> 1. The trial court erred when it found that Trooper Browne did not extend the traffic stop beyond its original scope in order to conduct a K9 sniff.
>
> 2. The trial court erred in finding that the K9 alerted establishing probable cause to allow a search of the vehicle after the K9 had become incapacitated when the K9 burnt its nose on the exhaust of the vehicle.
>
> 3. The trial court abused its discretion when it qualified Sergeant Barrett and an aexpert [sic] in K9 training and drug detection.
>
> 4. The trial court erred when it failed to merge Counts One and Three of the indictment because they are allied offenses.
>
> 5. The trial court erred when it imposed consecutive sentences.

(*Id*. at p. 31.)  The State filed a brief in response on July 27, 2020.  (*Id*. at pp. 64-88.)  On January 27, 2021, the Fifth District Court of Appeals affirmed the trial court's judgment.  (*Id*. at pp. 101-22); *Zuniga*, 2021-Ohio-196 at ¶ 70.

Mr. Zuniga timely filed a notice of appeal with the Supreme Court of Ohio, with the assistance of his present counsel.  (ECF Doc. 5-1, p. 124.)   In his memorandum in support of jurisdiction, Mr. Zuniga set forth the following four propositions of law:

> 1. The unreasonable extension of a pretextual traffic top is an unconstitutional seizure and a search conducted as a result must be suppressed.
>
> 2. Where evidence is presented demonstrating that a specific narcotics K9 search was flawed, any subsequent search and seizure must be suppressed as unconstitutional.
>
> 3. The qualification of an individual as an expert to bolster a witness's actions where Evidence Rule 702 factors are not met is error.
>
> 4. The imposition of consecutive terms of incarceration is invalid where it is inconsistent with the Ohio Revised Code and the purposes of felony sentencing.

(*Id*. at p. 129.)  The State opposed jurisdiction.  (*Id*. at pp. 166-86.)  On May 11, 2021, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (*Id*. at p. 187.)

## C.  Federal Habeas Corpus Petition

Mr. Zuniga raises two grounds for relief in his Petition:

**Ground One:** Violation of Fourth Amendment Right Against Unreasonable Searches and Seizures.

**Ground Two:** Admission of expert testimony to bolster other witness testimony resulted in violation of Petitioner's constitutional rights guaranteed by the Fifth and Fourteenth Amendments.

(ECF Doc. 1, pp. 6-8; ECF Doc. 1-1, pp. 3-7.)

## III.    Law & Analysis

## A.    Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As

amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.     Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. *See* 28 U.S.C. §§ 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, procedural default applies where state court remedies are no longer available. *See id.*

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim,

and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990) (finding failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims.  *See id.* (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show

that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

As Respondent argues that Ground Two was procedurally defaulted, the undersigned will address Petitioner's grounds for relief out of order.

## C.    Ground Two

Mr. Zuniga argues in Ground Two that the admission of expert testimony at his suppression hearing violated his Fifth and Fourteenth Amendment rights and denied him fundamental fairness.  (ECF Doc. 1, p. 8; ECF Doc. 1-1, p. 6.)  In response, Respondent asserts that Ground Two should be dismissed as procedurally defaulted because Mr. Zuniga failed to present his claims as constitutional issues at every level of state court review.  (ECF Doc. 5, pp. 10-13.)  Respondent further asserts that Mr. Zuniga has not shown cause or prejudice to excuse the procedural default.  (*Id*. at pp. 14-15.)  In the alternative, Respondent argues that Mr. Zuniga's claims in Ground Two are not cognizable in a federal habeas action (*id*. at pp. 19-22) or are without merit and should be denied (*id*. at pp. 23-25).

In his Traverse, Mr. Zuniga does not respond to the argument that Ground Two should be dismissed as procedurally defaulted (ECF Doc. 7), arguing only that his claims are cognizable and should be granted on the merits (*id*. at pp. 8-11).  For the reasons set forth below, the undersigned concludes that Ground Two should be **DISMISSED** based on procedural default.

Under the "fair presentation" standard, a federal habeas petitioner must present the facts and legal theories underpinning his claims to the state courts, *see McMeans*, 228 F.3d at 681, specifically presenting those claims as federal constitutional issues, not merely issues arising

under state law, *see, e.g., Baldwin*, 541 U.S. at 33-34; *Franklin*, 811 F.2d at 324-25.  "Because state courts, like federal courts, are required to enforce federal law, including rights asserted under the Constitution," the Sixth Circuit observes: "comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide any necessary relief."  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005)).  State courts are therefore "given the opportunity to see both the factual and legal basis for each claim," *id.* (quoting *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009)), before that claim is considered in a federal habeas petition.

To determine whether a claim was "fairly presented," Sixth Circuit courts consider:

whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Nian*, 994 F.3d at 751 (citations and internal quotation marks omitted).  A petitioner need not "recite 'chapter and verse' of constitutional law" to fairly present a claim.  *Id.* (quoting *Wagner*, 581 F.3d at 415; *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).  Nevertheless, the Sixth Circuit "has generally found procedural default when a petitioner made bare assertions of denial of 'rights to a fair trial' or 'due process.'"  *Nian*, 994 F.3d at 752 (citing *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004)).

Here, Mr. Zuniga clearly did not articulate his constitutional claims from Ground Two in his direct appeal to the Fifth District Court of Appeals.  He argued only that the trial court abused its discretion under state evidentiary rules when it qualified Sergeant Barrett as an expert.  (*See* ECF Doc. 5-1, pp. 47-48.)  He did not cite federal case law, articulate his claim in terms of constitutional law, or allege facts "well within the mainstream of constitutional law."  *McMeans*, 228 F.3d at 681 (citing *Franklin*, F.2d at 326 (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696

11

F.2d 186, 193-94 (2d Cir. 1982))).  Although he cited to some state court decisions, it was only

for propositions relating to Ohio's evidentiary rules.  (*See* ECF Doc. 5-1, p. 47 (citing *State v.*

*Hartman*, 93 Ohio St. 3d 274 (2001); *State v. Williams*, 4 Ohio St. 3d 53 (1983); *State v. Brooks*,

No. 2011-CA-59, 2012-Ohio 1725 (Ohio Ct. App. 2012)).)  Based on this record, the

undersigned concludes that Mr. Zuniga did not "fairly present" his constitutional claims from

Ground Two to the Ohio court of appeals.

It is sufficient for the present analysis that Mr. Zuniga did not fairly present the

constitutional claims from Ground Two to the Ohio court of appeals, since this Court cannot

consider issues that were not presented at every level of state court review.  *See Baston*, 282 F.

Supp. 2d at 661.  Nevertheless, the undersigned also concludes that Mr. Zuniga failed to fairly

present his constitutional arguments to the Supreme Court of Ohio.  In seeking Ohio Supreme

Court review, Mr. Zuniga reasserted his prior state-law evidentiary arguments nearly verbatim,

adding only a general assertion that: "The admission of this testimony was in violation of

Appellant's constitutional rights guaranteed by the Fourteenth Amendment to the United States

Constitution as well as Article I, Section 10 of the Ohio Constitution and, for these reasons, this

Court should accept jurisdiction."  (ECF Doc. 5-1, pp. 136-37.)[2]

The Sixth Circuit has explained that "[g]eneral allegations of the denial of rights to a 'fair

trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were

violated."  *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2d

Cir. 1984)); *see, e.g., Katt v. Lafler,* 271 F. App'x 479, 481 (6th Cir. 2008); *see also Blackmon*,

394 F.3d at 401 ("To escape procedural default, claims that the rights to due process and to a fair

trial have been violated must of themselves be fairly presented, rather than functioning as

---

[2] The Supreme Court of Ohio declined to exercise jurisdiction without comment.  (ECF Doc. 5-1, p. 187.)

catchall language appearing within the presentation of other non-constitutional arguments."). Mr. Zuniga's use of "catchall language" to generally assert unspecified violations of his constitutional rights under the U.S. and/or Ohio Constitutions was insufficient to fairly present the specific constitutional arguments articulated in Ground Two.  Accordingly, the undersigned concludes that Mr. Zuniga did not "fairly present" his constitutional claims from Ground Two to the Supreme Court of Ohio.

For the reasons set forth above, the undersigned finds that Mr. Zuniga failed to fairly present the constitutional claims in Ground Two at every level of state court review, and that Ground Two is therefore procedurally defaulted.[3]  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two based on procedural default.[4]

## D.    Ground One

In Ground One, Mr. Zuniga contends that the traffic stop and vehicle search that led to his convictions violated his Fourth Amendment right to be free from unreasonable search and seizure.  (ECF Doc. 1, p. 6; ECF Doc. 1-1, pp. 4-5.)  In response, Respondent asserts that Ground One must fail because it is a Fourth Amendment claim that is not cognizable on federal habeas review.  (ECF Doc. 5, pp. 17-19 (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)).)  Petitioner replies that his case falls within one of the narrow exceptions to this prevailing rule.  (ECF Doc. 7, pp. 5-8.)  For the reasons set forth below, the undersigned finds Mr. Zuniga's arguments are not well taken and concludes that Ground One should be **DISMISSED** as non-cognizable.

---

[3] Petitioner has not presented any argument regarding procedural default, and certainly has not argued that his procedural default should be excused based on cause and prejudice or a fundamental miscarriage of justice.  (*See* ECF Docs. 1-1, 7.)  The undersigned therefore concludes that any argument to excuse procedural default has been waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  While Petitioner does argue that the trial court's evidentiary ruling deprived him of "fundamental fairness" (ECF Doc. 7, pp. 8, 10), he does not argue that a "fundamental miscarriage of justice" resulted in the conviction of "one who is 'actually innocent.'"  *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).

[4] Given the recommendation to dismiss Ground Two as procedurally defaulted, it is unnecessary to consider Respondent's alternative arguments that the claims are not cognizable and without merit.  (ECF Doc. 5, pp. 19-25.)

In *Stone v. Powell*, the Supreme Court held: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. In so holding, the Court acknowledged the deterrent effect of applying the exclusionary rule at trial and on direct appeal—i.e., discouraging law enforcement officers from violating the Fourth Amendment by removing the incentive to disregard it—but reasoned that any additional deterrent effect that might be gained by applying the rule on federal habeas review would be minimal and would be outweighed by substantial societal costs. *Id.* at 492-94. The Sixth Circuit explains that the Supreme Court's decision in *Stone* was supported by two explanations:

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. . . . Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013) (citing *Stone*, 428 U.S. at 490, 493).

To determine whether the state provided an "opportunity for full and fair litigation of a fourth amendment claim" under *Stone*, the Sixth Circuit requires two distinct inquiries. *See Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). First, the court must consider "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id.* at 526. Second, the court must consider "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* Overall, an opportunity for full and fair litigation under *Powell* "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that

14

particular claim." *Good*, 729 F.3d at 639.  The basic question before the court is: "Did the state courts permit the defendant to raise the claim or not?"  *Id.* at 640.

As to the first inquiry required under *Riley*—whether Ohio's procedural mechanisms present an opportunity to raise a fourth amendment claim—the Sixth Circuit has already held that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate."  674 F.2d at 526.  The first inquiry is satisfied.

As to the second *Riley* inquiry—whether the presentation of Mr. Zuniga's fourth amendment claims was "in fact frustrated" by a failure in Ohio's procedural mechanisms—Mr. Zuniga acknowledges that he took advantage of Ohio's procedural mechanisms when he moved to suppress the challenged evidence, was granted a hearing, and later appealed the trial court's decision on the motion.  (ECF Doc. 7, p. 6.)  Indeed, the state court record reflects that he was able to file a suppression motion, present and cross-examine witnesses at a hearing, and appeal the trial court's decision to the Ohio appellate and supreme courts.  (*See* ECF Doc. 5-1, pp. 25 (notice of appeal to Fifth District), 123-24 (notice of appeal to Ohio Supreme Court); 188-90 (motion to suppress); 217-374 (transcript of suppression hearing).)

Nevertheless, Mr. Zuniga argues that he "was deprived of a fair opportunity to have meaningful state court consideration of his Fourth Amendment challenge" because: (1) "the fact that the stop was pretextual and came off of a tip from the drug task force/DEA" was "wholly missing from the Fifth District's analysis" of the appeal; (2) "the mechanism which supported the justification for a search . . . was not credible" because the police dog had "suffered an injury prior to alerting on the vehicle"; (3) "the K9 handler's direct supervisor was permitted to testify as an expert to bolster the credibility and reliability of his subordinate and the K9"; and (4) the facts presented at the suppression hearing did not support the trial court's ruling.  (ECF Doc. 7,

pp. 6-7.)  But a review of the court of appeals decision reveals that the officer's subjective motives for the stop, the alleged injury to the police dog, the supervisory role of the expert witness, and other facts presented at the suppression hearing were explicitly considered in upholding the trial court's decision.  *See, e.g., Zuniga*, 2021-Ohio-196, ¶¶ 26, 40, 47-48.

More importantly, all of Mr. Zuniga's arguments challenge the merits of the state court decisions, rather than the adequacy (or frustration) of Ohio's procedural mechanisms.  The second *Riley* inquiry requires "a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims, absent proof of 'egregious error in the application of fourth amendment principles,'" not "a case by case review of state court determinations."  *Abdul-Mateen v. Hofbauer*, 215 F.3d 1325 (Table), 2000 WL 687653, * 3 (6th Cir. 2000) (quoting *Riley*, 674 F.2d at 526).  As another district court explained, "[a]n argument directed solely at the correctness of the state court decision 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'"  *Brown v. Berghuis*, 638 F. Supp. 2d 795, 812-13 (E.D. Mich. 2009) (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir.1994)).

Here, Mr. Zuniga has failed to show that his use of Ohio's procedural mechanisms to present his Fourth Amendment challenge was "in fact frustrated" by a failure in those procedural mechanisms, or to show that the state courts committed an "egregious error in the application of fourth amendment principles."[5]  *Riley*, 674 F.2d at 526.  The second *Riley* inquiry is satisfied.

---

[5] The *Riley* court found that the state appellate court "frustrated the petitioner's opportunity to litigate his fourth amendment claims" when it found *sua sponte* that the petitioner lacked standing to raise his fourth amendment claims and then "failed to remand the case to the trial court to allow the petitioner to establish his standing to challenge the search."  674 F.2d at 527.  In this context, the court found "that federal habeas relief is available when a criminal defendant is not allowed to fully present his fourth amendment claim in the state courts because of unanticipated and unforeseeable application of a procedural rule which prevents state court consideration of the merits of the claim."  *Id.* at 528.  No such unforeseeable application of procedural rules is alleged in this case.

16

For the reasons set forth above, the undersigned concludes that Mr. Zuniga's Fourth Amendment claims in Ground One are not cognizable because the claims are excluded from federal habeas review under *Stone v. Powell.*  Accordingly, the undersigned recommends that the Court **DISMISS** Ground One as non-cognizable.

### IV.    Request for Evidentiary Hearing

Mr. Zuniga requests an evidentiary hearing at which he may offer "proof . . . concerning the allegations of this petition."  (ECF Doc. 1-1, p. 7.)  Mr. Zuniga has not identified what additional evidence might be elicited.  He also has not demonstrated that any evidence he seeks to offer could not have been previously discovered through the exercise of due diligence.  *See generally* 28 U.S.C. § 2254(e)(2).  Furthermore, as Respondent correctly points out, the claims at issue here can be resolved on the record without additional factual inquiry, obviating any need to hold an evidentiary hearing.  (ECF Doc. 5, p. 25 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Getsy v. Mitchell*, 495 F.3d 295, 310-11 (6th Cir. 2007) (*en banc*).)

Given Mr. Zuniga's conclusory and underdeveloped request for an evidentiary hearing, the undersigned finds Mr. Zuniga has not shown that an evidentiary hearing is warranted or appropriate.  The request for a hearing is accordingly **DENIED**.

## V.      Recommendation

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS**

Ground One as non-cognizable and **DISMISS** Ground Two as procedurally defaulted.


Date:   April 25, 2025


_/s/ Amanda M. Knapp_
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE



## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may forfeit the right to appeal the District Court's order.  *See
Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106
S. Ct. 466, 88 L. Ed. 2d 435 (1985).